Michael A. Kahn, Esq. - SBN 123155
michael@michaelkahnlaw.com
THE LAW OFFICES OF MICHAEL A. KAHN
A Professional Corporation
10990 Wilshire Boulevard, Suite 1040
Los Angeles, California 90024
Tel: (310) 209-1600
Fax: (310) 481-6076

Jeffrey Nadrich, Esq. - SBN 69216
jnadrich@personalinjurylawcal.com
NADRICH LAW CORPORATION
10990 Wilshire Boulevard
Suite 1050
Los Angeles, CA 90024
Tel: (310) 826-8082
Fax: (800) 995-2980

Attorneys for Plaintiff, BARBARA MORGAN

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA MORGAN,<br><br>Plaintiff<br><br>vs.<br><br>AMERICAN AIRLINES, INC. and CHERIAN ABRAHAM<br><br>Defendants. | **CASE NO.:**<br><br>COMPLAINT FOR:<br><br>1. Negligence<br>2. Intentional Infliction of Emotional Distress<br>3. Fraudulent Concealment<br>4. Sexual Battery<br>5. General Violence<br>6. Intentional Infliction of Emotional Distress<br>7. Violation of the Bane Act |

## COMPLAINT

Plaintiff, **Barbara Morgan**, through her attorneys, **Romanucci & Blandin, LLC**, **Nadrich Law Corporation,** and **Law Offices of**

COMPLAINT

1

**Michael A. Kahn,** complains against Defendants, **American Airlines, Inc.** and **Cherian Abraham**, as follows:

### INTRODUCTION

1.     Barbara Morgan was sexually assaulted by Cherian Abraham, an individual with a known history of predatory sexual misconduct on American Airlines' flights, while seated beside him on an overnight flight from San Francisco to Dallas on April 24, 2024. Unaware of his past, Plaintiff had no reason to believe that American Airlines had knowingly allowed a known offender to sit inches away from her.

2.     Plaintiff's assault on April 24, 2024, was not an isolated incident. It was the direct result of a culture at American Airlines that enables sexual predators, silences survivors, and treats safety warnings as public relations problems rather than urgent threats. Long before Plaintiff's assault, American Airlines had been warned about the growing epidemic of in-flight sexual violence, especially during overnight red-eye flights where women are trapped in dark cabins beside male strangers.

3.     American Airlines also knew that Abraham had been reported for prior assaults, yet they chose to do nothing. Nearly one year after Plaintiff's assault, Abraham was finally arrested. By the time of Abraham's arrest, he had assaulted at least three women—assaults that could have been prevented had American Airlines taken action when first put on notice.

COMPLAINT

2

4.     This lawsuit seeks to hold both Cherian Abraham and American Airlines, Inc. accountable—not only for the harm inflicted on Plaintiff, but for the systemic failures that enabled it. American Airlines must answer for every deliberate decision that allowed a known sexual predator to continue flying unchecked and to target unsuspecting women.

## NATURE OF THE PARTIES

5.     Plaintiff, Barbara Morgan, resides in Windsor, California.

6.     Upon information and belief, Defendant Cherian Abraham resides in the State of Texas.

7.     Defendant American Airlines is a corporation duly formed and existing under the laws of the State of Texas with a principal place of business located in Fort Worth, Texas.

## JURISDICTION AND VENUE

8.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sec. 1331 and 1332 because there exists complete diversity of citizenship of the parties and the amount in controversy exclusive of interest and costs, exceeds $75,000.

9.     Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391, in that a substantial part of the incident giving rise to the action originated and took place within the Northern District of California.

COMPLAINT

10. Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391, in that the majority of post-assault damages occurred in this district.

11. Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391, in that Defendant American Airlines has offices and transacts business within the Northern District of California, operating regular commercial flights out of Terminal 1 and Terminal 2 of San Francisco International Airport. Defendant American Airlines regularly and systematically conducts business, solicits business, and earns substantial revenue from business conducted within this district.

## FACTUAL ALLEGATIONS

12. Upon information and belief, Defendant American Airlines was and is a common carrier engaged in the business of transporting passengers for hire by air and operates an extensive international and domestic network of flights.

13. Upon information and belief, Defendant American Airlines employs a flight crew, gate agents, and other airline staff, tasked with ensuring the safe and secure operation of their flights, as well as the safety and well-being of their passengers.

14. On April 24, 2024, Defendant American Airlines operated and controlled Flight 2111 from San Francisco International Airport (SFO) to Dallas- Fort Worth International Airport (DFW).

15.    Flight 2111 was a red-eye flight, scheduled to depart SFO at 11:59 p.m. and arrive at DFW early the following morning, April 25, 2024.

16.    Flight 2111 is considered a "red-eye" flight because of its late-night departure and early morning arrival.

17.    Flight 2111 was conducted on an aircraft owned, leased, operated, staffed, or otherwise controlled by Defendant American Airlines.

18.    Defendant American Airlines was responsible for the training, management, supervision, and/or control of its flight crew aboard the subject flight, including but not limited to the crew's adherence to their own internal standard safety policies and protocol as well as federal policies, regulations, guidelines and standards.

19.    On April 24, 2024, Plaintiff was a fare-paying passenger aboard American Airlines Flight 2111 from SFO to DFW, traveling to visit her son in celebration of his new job.

20.    Plaintiff did not select her seat; American Airlines assigned her to seat 28B, a middle seat.

21.    Prior to takeoff, Plaintiff had asked if her husband, who was also a passenger on the flight, could switch seats to sit beside her, as the flight was not full.

22.    Prioritizing profits over common-sense safety, American Airlines refused to allow the seat change unless the couple paid an additional $70.

23.    As a result, Plaintiff was left seated next to a stranger with a known history of sexually assaulting other passengers.

24.    Defendant Cherian Abraham was also a passenger on Flight 2111.

25.    Upon information and belief, Defendant Cherian Abraham, a Senior Account Director for Nokia, frequently traveled on American Airlines flights for business.

## Plaintiff's Sexual Assault Aboard Flight 2111

26.    On Flight 2111, Defendant Abraham was assigned seat 28A, a window seat directly beside Plaintiff in seat 28B, a middle seat.

27.    Both passengers were seated in the Economy section, where space is limited and seats are tightly confined.

28.    Shortly after takeoff, the cabin lights were dimmed by the American Airlines crew, consistent with overnight "red-eye" flight protocol.

29.    After the lights were dimmed, Defendant Abraham began rubbing his arm against the side of Plaintiff's torso, deliberately attempting to touch her breasts.

30.    Plaintiff shifted in her seat, trying to create distance between her and Abraham.

31.    Undeterred, Defendant Abraham placed his hand on Plaintiff's upper thigh, slid it up toward her vagina, and fondled her genitals.

32.    Plaintiff yelled "STOP" at Defendant Abraham twice.

33.    Despite her clear distress, no American Airlines employee intervened or made any attempt to investigate.

34.    Most passengers were either asleep or wearing headphones and were unaware of the assault as it occurred.

35.    Defendant Abraham then retrieved his bag from under the seat in front of him and placed it on his lap, attempting to conceal that he was visibly aroused.

36.    In a state of shock, Plaintiff froze. Confined to the middle seat and unsure how to protect herself, she feared escalating the situation.

37.    Throughout the flight, American Airlines staff rarely walked through the cabin, leaving Plaintiff even more isolated. Crew members failed to conduct walkthroughs at least once every sixty minutes, as required.

38.    Plaintiff endured severe emotional distress for the remainder of the flight, trapped beside her assailant as she waited for the plane to land.

39.    Upon landing, Plaintiff immediately approached the American Airlines gate agent to report the assault.

40.    Plaintiff pointed at Defendant Abraham, identifying him as the perpetrator of the assault to the American Airlines gate agent.

41.    The American Airlines gate agent engaged in victim-blaming, questioning why Plaintiff had not taken further action to report the assault during the flight.

42.    After Plaintiff explained her fear and the difficulty of reporting the assault while confined to her seat, she also shared that she was afraid the plane might be re-routed, potentially causing anger among passengers, and that she feared retaliation from the perpetrator seated inches away. Despite this, the gate agent told her there was nothing they could do and directed her to file a complaint on the American Airlines website, failing to elect to involve law enforcement.

### American Airlines' Complete Disregard of Plaintiff's Complaints that She Was Sexually Assaulted on Their Airplane

43.    As instructed, Plaintiff submitted a formal complaint to American Airlines on April 25, 2024, using the airline's customer complaint form. In her submission, she detailed the sexual assault and included the flight number, her seat assignment, and Defendant Abraham's seat assignment.

44.    On April 25, 2024, American Airlines responded to Plaintiff's complaint with a generic automated acknowledgment stating that the airline would follow up.

45.    When no substantive response followed, Plaintiff took further action on April 30, 2024, sending a detailed account of the assault (including the flight and seat information) directly to American Airlines' Director of Customer Relations Markus Ewing, Vice President of

COMPLAINT

Reservations and Service Recovery Carolyne Truelove, and CEO Robert Isom.

46.   On May 3, 2024, Plaintiff received yet another automated response from American Airlines, reiterating that the matter would be addressed, but offering no meaningful engagement or support.

47.   On May 4, 2024, Plaintiff emailed American Airlines Customer Relations to express her concern over the airline's failure to provide a timely or meaningful response. In her message, she warned that Defendant Abraham would continue to abuse girls, women, and others if American Airlines failed to take action. Despite this clear warning, American Airlines did nothing.

48.   On May 7, 2024, Defendant American Airlines' Customer Relations  employee Christine Zimmer emailed Plaintiff

> *"Hello Mrs. Morgan:·*
>
> *Thank you for contacting American Airlines Customer Relations.*
>
> *We received your inquiry regarding recent travel with American Airlines. We've asked our Corporate Security department to review details and reply to you in a timely manner. Someone will be in touch as soon as possible. In the meantime, we appreciate your continued patience.*
>
> *Mrs. Morgan, thank you for choosing American Airlines."*

COMPLAINT

49.    In the days that followed, a representative of American Airlines contacted Plaintiff by phone.

50.    During the call, the representative once again dismissed Plaintiff's report of sexual assault and shifted blame onto her for not reporting it while still in the air.

51.    On May 9, 2024, American Airlines sent Plaintiff a customer satisfaction survey, asking her to rate her experience.

52.    Defendant Abraham's offensive and harmful sexual assault aboard Flight 2111 caused Plaintiff to suffer deep humiliation, shame, and emotional distress. These harms were magnified by American Airlines' failure to protect her. Plaintiff continues to experience anger, sadness, self-doubt, fear, and recurring flashbacks of the assault.

53.    Plaintiff has endured physical manifestations of the trauma, including persistent headaches, sleeplessness, and body aches. The assault has impacted how Plaintiff engages with others. She has become guarded, irritable, and fearful of physical contact, even with loved ones. These effects continue to this day.

54.    Abraham's assault violated Plaintiff's bodily and sexual autonomy, stripped her of dignity, and robbed her of a basic sense of safety. American Airlines' inaction and indifference reinforced that violation by treating her assault as a logistical inconvenience rather than a serious act of sexual and gender violence.

COMPLAINT

### American Airlines Was Aware of Prior Sexual Misconduct by Defendant Abraham on Its Flights Before Plaintiff's Assault and Failed to Act

55. Prior to the April 24, 2024assault on Plaintiff, American Airlines had been made aware of at least one prior incident involving sexual misconduct by Defendant Cherian Abraham aboard one of its flights.

56. Despite this knowledge, American Airlines failed to investigate, discipline, or restrict Abraham in any way, and continued to allow him to fly without oversight or warning to other passengers.

57. After Plaintiff submitted multiple reports detailing Abraham's assault, American Airlines repeatedly dismissed her concerns and allowed Abraham to continue flying without consequence or restriction.

58. In March of 2025, the U.S. Attorney's Office for the Western District of Washington announced charges against Defendant Abraham for his subsequent sexual assault of another American Airlines female passenger.

59. The announcement references previous sexual assaults onboard American Airlines flights, including the sexual assault of Plaintiff.

60. Defendant American Airlines had the opportunity to ban Defendant Abraham from flying on American Airlines after the first reported sexual assault onboard an American Airlines flight, back in 2023.

COMPLAINT

11

61.   Instead, Defendant American Airlines failed to take any action to protect passengers, like Barbara, in favor of Defendant Abraham's business.

62.   Since the charges were filed, American Airlines has issued a public statement claiming that "[t]he safety of our customers and team members is our highest priority." Yet this statement stands in stark contrast to the airline's

repeated dismissal of Plaintiff's reports and its failure to act—allowing Abraham's predatory behavior to continue until at least a third known victim was sexually assaulted.

## American Airlines was on Notice Regarding the Prevalence of Sexual Assaults on Airplanes

63.   Long before Plaintiff's assault, the issue of in-flight sexual assault was a well-known concern within the airline industry, even if largely hidden from the general public.

64.   In 2018, the FBI issued a public advisory in which FBI Special Agent Caryn Highley explained that "[t]here is a perception on an airplane that you're in a bubble of safety," but that perception is false.

65.   The same advisory noted a substantial increase in the number of reported in-flight sexual assaults.

66.   Reported incidents of in-flight sexual assault represent only a small fraction of the actual number of assaults, as many victims choose not to report due to fear, shame, or concern about causing a disturbance during the flight.

COMPLAINT

67.    To address crimes occurring aboard aircraft, the FBI assigns Airport Liaison Agents (ALAs) to nearly 450 U.S. aviation facilities.

68.    ALAs are responsible for responding to in-flight crimes, including sexual assault, which fall within the FBI's special investigative jurisdiction

69.    At major airports, multi-agency task forces are also in place to investigate a range of criminal offenses, including sexual assaults on board commercial flights.

70.    Sexual assaults aboard aircraft are most often perpetrated by men against women and frequently occur on long-haul flights when the cabin is dark and passengers are less alert.

71.    Victims are often seated in middle or window seats, where they are physically trapped and unable to easily remove themselves from the situation.

72.    Offenders are known to frequently exploit the likelihood that victims may remain silent out of embarrassment or fear of causing a disruption.

## American Airlines' Systematic and Ongoing Failure to Prevent and Respond to Sexual Assaults

73.    American Airlines has a documented history of disregarding victims while enabling known or suspected sexual predators.

74.    The airline publicly claims to prioritize safety—stating in its Standards of Business Conduct that it "protect[s] the health and safety

of our colleagues and customers," and instructs employees to "perform your job with the highest regard for safety—for both customers and colleagues—and report any activity that might compromise safety or violate laws or our policies." Yet in practice, American Airlines has consistently acted in direct contradiction to these promises, ignoring the very standards it claims to uphold.

75.    In reality, American Airlines has repeatedly failed to take allegations of sexual assault seriously—particularly when those allegations are raised by women.

76.    In 2017, Aubrey Lane was raped in the lavatory of an American Airlines flight after she repeatedly asked flight crew to intervene when a male passenger, who had been overserved alcohol, began sexually harassing her.[1]

77.    Despite her repeated pleas, the crew failed to act. The harassment escalated into sexual assault, and American Airlines did nothing to prevent or stop it.

78.    After the assault, American Airlines dismissed Lane's claims as a "nuisance" and offered her $5,000 in compensation.

79.    Ultimately, Lane was forced to bring a lawsuit. American Airlines did not resolve the matter until the eve of trial in January 2025, when it finally agreed to settle.

---

[1]

[1] https://www.theguardian.com/us-news/2018/nov/03/aubrey-lane-american-airlines-lawsuit-sexual-harassment

COMPLAINT

14

80.    In another disturbing incident on May 27, 2024, Neel Elsherif was subjected to a male passenger openly masturbating beside her for over an hour during an American Airlines flight.[2]

81.    When Elsherif sought help from American Airline staff, she was met with a shocking dismissal: the flight attendant stated "men just do stuff like that."

82.    This disturbing pattern of minimizing, excusing, and failing to act on reports of sexual misconduct is consistent across multiple public incidents involving American Airlines, and likely more that are not public.

### FIRST CAUSE OF ACTION NEGLIGENCE
### (Cal. Civ. Code 1714(a))
### (Against Defendant American Airlines Inc.)

83.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

84.    At all relevant times, Defendant American Airlines was a "common carrier" under California state law.

85.    At all relevant times, Defendant American Airlines was in the business of transporting the general public.

86.    At all relevant times, American Airlines' staff was acting within the scope of their employment with Defendant American Airlines.

---

[2] https://people.com/ceo-suing-american-airlines-claiming-flight-attendant-dismissed-her-when-man-allegedly-masturbated-near-her-11705696

COMPLAINT

15

87.   At all relevant times, Plaintiff reasonably believed, based on the terms and representations of her contract with American Airlines, that the airline would prioritize her safety, comfort, and well-being during the flight.

88.   At all relevant times, Defendant American Airlines maintained a regular place of business in San Francisco International Airport for the purpose of transporting passengers.

89.   At all relevant times, Defendant American Airlines advertised its services to the general public, including persons in the State of California.

90.   At all relevant times, Defendant American Airlines charged standard fees for its services.

91.   At all relevant times, Defendant American Airlines had regular scheduled departures, fixed routes, and a transportation license in the State of California.

92.   As a common carrier, Defendant American Airlines owed a heightened duty of care to ensure the safety and well-being of its passengers.

93.   That duty required American Airlines and its employees to exercise the highest degree of care and the vigilance of a very cautious person to protect Plaintiff from foreseeable harm, including assaults by other passengers.

94.   As a common carrier, American Airlines had an affirmative duty to protect passengers, like Plaintiff, from assault and other harmful

conduct by fellow passengers while aboard the flight.

95.   Flight attendants are positioned throughout the cabin to help ensure passenger safety, including by monitoring for signs of distress or misconduct.

96.   Defendant American Airlines knew or should have known that passengers, including Plaintiff, were at risk of sexual assault by Defendant Abraham, having previously received at least one report of his sexual misconduct aboard an American Airlines flight.

97.   Defendant American Airlines breached their duty of care to protect Plaintiff and other passengers when they:

a) Failed to recognize or act upon the known danger Defendant Abraham posed to female passengers, despite prior reports of his sexual misconduct aboard American Airlines flights.

b) Failed to ban or restrict Defendant Abraham from flying on American Airlines, including on Flight 2111 on April 24, 2024.

c) Failed to implement any measures to monitor or supervise Defendant Abraham while onboard the flight.

d) Failed to adequately supervise their flight crew, who neglected their obligation to walk through and monitor the cabin at least once every sixty
(60) minutes.

e)   Assigned Plaintiff to a middle seat beside a male passenger with a known history of sexual misconduct, without any warning or opportunity for reassignment.

f) Failed to implement additional safety precautions on Flight 2111, a red- eye long-haul flight with a dark cabin—despite industry knowledge that such conditions heighten the risk of in-flight sexual assault.

g) Failed to train flight crew to recognize and respond to signs of passenger distress, such as Plaintiff's repeated verbal objections to Defendant Abraham's behavior.

h) Failed to act on well-established guidance from the FBI and

other aviation authorities regarding the prevalence and prevention of in-flight sexual assaults.

i) Failed to develop or enforce internal policies to identify, track, and restrict passengers previously reported for sexual misconduct.

j) Failed to report Defendant Abraham to law enforcement following Plaintiff's assault, despite being placed on direct notice of his criminal conduct.

98.    Defendant American Airlines' acts and omissions enabled Defendant Abraham's sexual assault of Plaintiff demonstrates an utter disregard for Plaintiff's safety, well-being, and rights.

99.    Plaintiff suffered severe emotional distress as a direct result of American Airlines' failure to act on known risks, its indifference to her complaints, and its mishandling of her assault.

100. American Airlines knew, or in the exercise of the highest degree of care should have known, that allowing Defendant Abraham to continue flying posed a danger to other passengers, including Plaintiff.

101.  American Airlines knew, or in the exercise of the highest degree of care should have known, that dismissing her report or blaming her for the assault would inflict further psychological harm.

102. Had American Airlines exercised the care required of a common carrier, it could have prevented the sexual assault.

103. As a direct and proximate result of American Airlines' gross negligence—including its failure to act on prior complaints, to monitor the flight, and to meaningfully respond after each reported assault—Plaintiff was sexually assaulted and suffered ongoing emotional and psychological trauma.

COMPLAINT

104. The harm that Plaintiff suffered was a foreseeable and probable consequence of Defendant American Airlines' grossly negligent conduct, including: allowing Defendant Abraham to continue flying despite prior reports of sexual misconduct; assigning Plaintiff a middle seat beside him on a nighttime long-haul flight; and failing to properly supervise the cabin during the fligh

## SECOND CAUSE OF ACTION INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant American Airlines Inc.)

105.  Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

106. At all times relevant, American Airlines' conduct toward Plaintiff was extreme and outrageous, violating the airline's legal, ethical, and contractual duties to protect its passengers from foreseeable harm.

107.  As a common carrier and service provider with superior knowledge and control over in-flight safety, American Airlines stood in a position of authority and responsibility over Plaintiff, amplifying the impact of its callous and indifferent response to her assault.

108.  American Airlines' conduct—including its failure to protect Plaintiff despite prior knowledge of Abraham's predatory behavior, its dismissive and victim- blaming response to her reports, and its refusal to take corrective action—was intentional, reckless, and demonstrated

a conscious disregard for the high probability of causing severe emotional distress.

109. As a direct and proximate result of American Airlines' conduct, Plaintiff has suffered, and continues to suffer, severe emotional distress, including humiliation, fear, anxiety, nightmares, and a diminished sense of safety and autonomy.

## THIRD CAUSE OF ACTION FRAUDULENT CONCEALMENT
### (Cal. Civ. Code 3294)
### (Against Defendant American Airlines Inc.)

110.  Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

111. Prior to April 24, 2024, Plaintiff purchased a ticket to fly on American Airlines Flight 2111 from San Francisco to Dallas.

112. As part of that transaction, American Airlines represented, expressly and implicitly, that it would provide her with safe, secure, and reliable transportation. Plaintiff justifiably relied on that representation.

113.  As a common carrier under California law, American Airlines owed Plaintiff the highest duty of care to ensure her safety while aboard its aircraft.

114. At the time of Plaintiff's flight, American Airlines was aware that sexual assaults had occurred with increasing frequency aboard its aircraft, particularly on overnight flights.

COMPLAINT

115. American Airlines was also aware that Defendant Abraham had been previously reported for sexually assaulting a female passenger on one of its flights.

116. The existence and content of that report were known solely to American Airlines and were not accessible to Plaintiff or the public.

117. Despite knowing that Defendant Abraham posed a foreseeable threat, American Airlines allowed him to continue flying without restriction or supervision and assigned Plaintiff a middle seat directly beside him on a red-eye flight.

118.  At no time did American Airlines disclose to Plaintiff that she had been seated next to a known sexual predator. Nor did it disclose that it had received prior reports of sexual assaults involving Defendant Abraham.

119. American Airlines intentionally concealed these material facts in order to protect its corporate reputation, avoid regulatory scrutiny, and preserve its business interests.

120. American Airlines also intentionally concealed the broader problem of in-flight sexual assaults from the public, passengers, and regulatory authorities— including the number of complaints it had received and the lack of action taken in response.

121. Had Plaintiff known that she would be seated next to a known sexual predator, or that American Airlines had a documented history of ignoring in-flight sexual assault, she would not have flown on Flight 2111.

122. American Airlines' concealment of material facts deprived Plaintiff of the opportunity to make an informed decision about her safety and exposed her to a known and preventable danger.

123. As a direct and proximate result of American Airlines' fraudulent concealment, Plaintiff was sexually assaulted by Defendant Abraham while seated in the seat assigned to her by the airline.

124. American Airlines' fraudulent concealment was a substantial factor in causing Plaintiff's harm.

125. American Airlines' conduct was intentional, malicious, oppressive, and carried out with a willful and conscious disregard for the safety of its passengers, including Plaintiff.

### FOURTH CAUSE OF ACTION SEXUAL BATTERY
### (Cal. Civ. Code § 1708.5)
### (Against Defendant Cherian Abraham)

126.  Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

127. Defendant Abraham intended to cause harmful contact with Plaintiff's breast when he rubbed his arm up and down the side of her body to touch her breast.

128. Defendant Abraham intended to cause a harmful contact  with Plaintiff's vagina when he slid his hand up Plaintiff's leg toward her vagina.

129. Defendant Abraham intended to cause an imminent fear of a harmful or offensive contact with Plaintiff's breast when Defendant

Abraham rubbed his arm up and down the side of Plaintiff's body to feel her breast.

130. Defendant Abraham intended to cause an imminent fear of a harmful or offensive contact with Plaintiff's vagina when he slid his hand up Plaintiff's leg towards her vagina.

131. Defendant Abraham knew that his sexually offensive contact with Plaintiff was substantially certain to result in harm to Plaintiff.

132. Defendant Abraham did cause a sexually offensive contact with Plaintiff when rubbing his arm up and down the side of Plaintiff's body to feel her breast.

133. Defendant Abraham did cause asexually offensive contact with B Plaintiff when he slid his hand up Plaintiff's leg towards her vagina.

134. Plaintiff never consented, explicitly nor implicitly, to Defendant Abraham's touching.

135. Plaintiff suffered severe emotional distress, including but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame as a direct and proximate result of Defendant Abraham's conduct.

### FIFTH CAUSE OF ACTION GENDER VIOLENCE
#### (Cal. Civ. Code § 52.4)
**(Against Defendant American Airlines and Cherian Abraham)**

136. Plaintiff hereby re-alleges and incorporates by reference all

---

COMPLAINT

allegations in each and every preceding paragraph.

137.  Defendant Abraham's acts against Plaintiff, as alleged here constitute gender violence in that the acts constitute a criminal offense under state law that has, as an element, the use, attempted use, or threatened use of physical force against the person of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

138. Defendant Abraham's acts against Plaintiff constitute gender violence in that Defendant Abraham's conduct caused a physical intrusion or physical invasion of a sexual nature upon Plaintiff under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

139. Pursuant to Civil Code section 52.4, a plaintiff who has been subjected to gender violence "may seek actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief." (Civ. Code § 52.4, subd. (a).) Further, "[a] prevailing plaintiff may also be awarded attorney's fees and costs." (Id.)

140. As a direct and proximate result of Defendants' collective acts and omissions, Plaintiff suffered severe emotional distress, mental anguish, remorse, guilt, humiliation, and embarrassment.

141. Defendants' collective acts and omissions were oppressive, malicious, and despicable in that it was intentional and done in

conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of their right to be free from such tortious behavior, such as to constitute oppression, fraud and malice.

**SIXTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL**
**DISTRESS**
**(Against Defendant Cherian Abraham)**

142. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

143. Upon information and belief, Defendant Abraham was preying on Plaintiff because he knew she was vulnerable flying as a woman without a travel companion sitting in the same row as her.

144.  Upon information and belief, Defendant Abraham was preying on Plaintiff because he knew she was vulnerable while sitting in a middle seat, without easy access to get away from Defendant Abraham.

145. Upon information and belief, Defendant Abraham was preying on Plaintiff because she was flying on a red-eye flight where the cabin would be dark and people would be sleeping and less likely to help Plaintiff.

146. Upon information and belief, Defendant Abraham, knowing that the helplessness of the situation was likely to paralyze Plaintiff with fear, perpetuated a sexual assault against Plaintiff.

147. Defendant Abraham's conduct was beyond the bounds of decency accepted by society and was intentional, outrageous, malicious, and committed for the purpose of Plaintiff to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or

emotional distress, or done in reckless disregard of the probability of causing Plaintiff to suffer anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

148. As a direct and proximate result of Defendant Abraham's conduct, Plaintiff suffered severe emotional distress, mental anguish, remorse, guilt, humiliation, and embarrassment.

149. Defendant Abraham acted willfully, intentionally, and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and/or oppression under Civil Code section 3294, thereby entitling Plaintiff to punitive damages.

## SEVENTH CAUSE OF ACTION VIOLATION OF THE BANE ACT
### (Cal. Civ. Code § 52.1)
### (Against Defendant Cherian Abraham)

150. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

151. Plaintiff has a constitutional right to travel freely under the Fifth and Fourteenth Amendments.

152. Defendant Abraham acts against Plaintiff were violent acts to prevent Plaintiff from exercising her right to travel freely or to retaliate against her for doing so.

153. Defendant Abraham intended to deprive Plaintiff of her enjoyment of the interests in traveling freely protected by the Fifth and Fourteenth Amendment.

154. Plaintiff suffered severe emotional distress as a result of Defendant Abraham's violent conduct.

COMPLAINT

26

155. Defendant Abraham's conduct was a substantial factor in Plaintiff's severe emotional distress.

156. Defendant Abraham's conduct was a direct and proximate result of Plaintiff's severe emotional distress.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Barbara Morgan, respectfully prays for judgment against Defendants American Airlines, Inc. and Cherian Abraham as follows:

a) For past, present, and future general damages in an amount according to proof at trial;

b) For punitive and exemplary damages in an amount sufficient to punish Defendants and deter similar misconduct, including pursuant to California Civil Code § 3294 for the egregious conduct of Defendants American Airlines, Inc. and Cherian Abraham;

c) For any applicable statutory damages;

d) For pre- and post-judgment interest as permitted by law;

e) For the costs of suit incurred;

f) For reasonable attorneys' fees as allowed by law; and

g) For such other and further relief as the Court may deem just and proper.

COMPLAINT

27

**DATED**: April 24, 2025

Respectfully submitted,

*/s/ Patrick J. Driscoll*

Attorney for Plaintiff

Antonio Romanucci (*Pro Hac Vice Forthcoming)
aromanucci@rblaw.net
Patrick J. Driscoll (*Pro Hac Vice Forthcoming)
pdriscoll@rblaw.net
Sarah M. Raisch (*Pro Hac Vice Forthcoming)
sraisch@rblaw.net
Daisy Ayllon (*Pro Hac Vice
Forthcoming) dayllon@rblaw.net
ROMANUCCI & BLANDIN, LLC
321 N. Clark St., Suite 900
Chicago, IL 60654
Tel: (312) 253-8618
Fax: (312) 458-1004

Respectfully submitted,

*/s/ Michael A. Kahn*

Attorney for Plaintiff

Michael A. Kahn
michael@michaelkahnlaw.com
LAW OFFICES OF MICHAEL A. KAHN
10990 Wilshire Blvd., Suite 1040
Los Angeles, CA 90024
Tel: (310) 209-1600
Fax: (310) 481-6076

Respectfully submitted,

*/s/ Jeffrey Nadrich*

Attorney for Plaintiff

COMPLAINT

28

1  Jeffrey Nadrich
2  jnadrich@personalinjurylawcal.com
   NADRICH LAW CORPORATION
3  10990 Wilshire Blvd., Suite
   1050 Los Angeles, CA 90024
4  Tel: (310) 826-8082
   Fax: (800) 995-2980
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1

## DEMAND FOR JURY TRIAL

2

3    A trial by jury is hereby demanded by Plaintiff.

4                                      Respectfully submitted,

5                                      */s/ Patrick J. Driscoll*

6
                                      Attorney for Plaintiff
7

8    Antonio Romanucci (*Pro Hac Vice Forthcoming)
9    aromanucci@rblaw.net
     Patrick J. Driscoll (*Pro Hac Vice Forthcoming)
10   pdriscoll@rblaw.net
     Sarah M. Raisch (*Pro Hac Vice Forthcoming)
11   sraisch@rblaw.net
     Daisy Ayllon (*Pro Hac Vice
12   Forthcoming) dayllon@rblaw.net
     **ROMANUCCI & BLANDIN, LLC**
13   321 N. Clark St., Suite 900
     Chicago, IL 60654
14   Tel: (312) 253-8618
     Fax: (312) 458-1004
15

16

17                                     Respectfully submitted,

18                                     */s/ Michael A. Kahn*

19
                                      Attorney for Plaintiff
20

21   Michael A. Kahn
22   michael@michaelkahnlaw.com
     **LAW OFFICES OF MICHAEL A. KAHN**
23   10990 Wilshire Blvd., Suite
     1040 Los Angeles, CA 90024
24   Tel: (310) 209-1600
     Fax: (310) 481-6076
25

26

27

28

---

COMPLAINT

30

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*/s/ Jeffrey Nadrich*

Attorney for Plaintiff

Jeffrey Nadrich
jnadrich@personalinjurylawcal.com
**NADRICH LAW CORPORATION**
10990 Wilshire Blvd., Suite
1050 Los Angeles, CA 90024
Tel: (310) 826-8082
Fax: (800) 995-2980

COMPLAINT

31